IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02532-BNB

JANOS TOEVS,

    Plaintiff,

v.

KEVIN MILYARD,
TOM CLEMENTS,
ARISTEDES ZAVARAS,
JAMES FALK,
ANTHONY DECESARO,
CAPTAIN WHITNEY,
C. O. MERRILL,
C. O. RALSTON,
BERANDETTE SCOTT,
SGT. CHRISTIANS, all in their official and individual capacities,

    Defendants.

---

ORDER TO DISMISS IN PART AND TO DRAW CASE
TO A DISTRICT JUDGE AND A MAGISTRATE JUDGE

---

    Plaintiff, Janos Toevs, is a prisoner in the custody of the Colorado Department of Corrections (DOC) who currently is incarcerated at the correctional facility in Sterling, Colorado. Mr. Toevs initiated the instant action by filing *pro se* a Prisoner Complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the United States Constitution. On January 1, 2013, in response to an order of December 10, 2012 (ECF No. 6), he filed *pro se* an amended § 1983 Prisoner Complaint (ECF No. 9). Mr. Toevs asks for money damages and injunctive relief.

    Mr. Toevs has been granted leave to proceed pursuant to the federal *in forma pauperis* statute, 28 U.S.C. § 1915. Subsection (e)(2)(B) of § 1915 requires a court to

dismiss sua sponte an action at any time if the action is frivolous, malicious, or seeks monetary relief against a defendant who is immune from such relief. A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). Under § 1983, a plaintiff must allege that the defendants have violated his or her rights under the Constitution and laws of the United States while they acted under color of state law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Mr. Toevs is cautioned that his ability to file a civil action or appeal in federal court *in forma pauperis* pursuant to § 1915 may be barred if he has three or more actions or appeals in any federal court that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Under § 1915(g), the Court may count dismissals entered prior to the enactment of this statute. *Green v. Nottingham*, 90 F.3d 415, 420 (10th Cir. 1996).

The Court must construe Mr. Toevs' amended complaint liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court cannot act as an advocate for a *pro se* litigant. See Hall, 935 F.2d at 1110. For the reasons stated below, the amended complaint will be dismissed in part.

Mr. Toevs asserts five claims for relief: (1) retaliation for the exercise of free speech, (2) denial of access to the courts, (3) denial of right to send and receive mail, (4) denial of equal protection, and (5) violation of right to be free from cruel and unusual punishment.

### 1.  Retaliation

Mr. Toevs alleges that on October 20, 2010, he attended a mandatory meeting concerning expectations of inmates housed in the prison's Incentive Pod (I-Pod), a less-restrictive living unit where inmates are afforded extra privileges for demonstrating positive behavior over time.  Plaintiff contends that, while addressing inmates on I-Pod issues, Defendant Kevin Milyard asked him, "Do you have a problem with that?"  ECF No. 1 at 4.  When Mr. Toevs responded, "Yes, actually I do," *id.*, Warden Milyard directed him to leave the meeting immediately and ordered him removed, at the warden's discretion, from the I-Pod.  On the basis of these allegations, Mr. Toevs maintains that he was retaliated against for protected speech, i.e., his comment to the warden.  He also complains that Defendants Captain Whitney, and Correctional Officers Ralston and Merrill removed him from the I-Pod meeting, and that Defendant Aristedes Zavaras failed to take remedial steps, apparently to return him to the I-Pod. This claim will be drawn to a district judge and a magistrate judge.

### 2.  Access to the Courts

Mr. Toevs complains that inadequacies in the prison's grievance system have prevented him from bringing non-frivolous claims to court.  The claims include confiscation of (1) a box of legal materials, (2) a hat, and (3) detailed records on the confiscation of the legal materials and hat.  He complains that Defendant Anthony DeCesaro, a grievance officer, has the authority to determine whether or not claims are exhausted.  He also complains that Defendant, Tom Clements, DOC executive director, is responsible for creating an inadequate grievance system.

Mr. Toevs' second claim is not an arguable claim for violations of Plaintiff's constitutional right of access to the courts. Prisoners have a constitutional right of access to the courts which may require that prison officials provide prisoners with adequate law libraries or adequate assistance from persons trained in the law. *See Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977). Access to counsel is another means to ensure access to the courts. *See Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (citing *Evans v. Moseley*, 455 F.2d 1084, 1087 (10th Cir. 1972) (prisoner's right to correspond with attorney does not extend to correspondence "on any subject," but only to issues implicating access to courts)).

However, to state a claim for violation of the constitutional right to access the courts, a prisoner "must demonstrate actual injury . . . —that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (citing *Lewis v. Casey*, 518 U.S. 343, 351–55 (1996)). Furthermore, the right of access to the courts extends only as far as protecting an inmate's ability to prepare initial pleadings in a civil rights action regarding his or her current confinement or in an application for a writ of habeas corpus. *See Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir.1995). *See also Lewis*, 518 U.S. at 354 (disclaiming statements in *Bounds* suggesting that the State must enable the prisoner to *litigate effectively* once in court) (emphasis in the original). Finally, there is no independent constitutional right to use state grievance procedures. *Reed v. Clements*, No. 12-cv-00927-BNB, 2012 WL 3129935, at *3 (D. Colo. July 31, 2012) (unpublished). Here, Plaintiff does not allege facts to show that he has suffered an

4

actual injury as a result of the confiscation of his box of legal materials, hat, and detailed records on the confiscation of legal materials and hat. He does not allege that he has been frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement in a civil rights action or a habeas corpus application. Accordingly, claim two will be dismissed as legally frivolous.

### 3. Mail

Mr. Toevs alleges that in February 2012 he learned the Colorado Prison Law Project (CPLP) wanted information regarding conditions of confinement at the Sterling Correctional Facility. He contends he attempted to send information to the CPLP concerning his first, second, and fifth claims, as well as other documentation including affidavits of other inmates, but the envelope was intercepted and confiscated as contraband by Defendant Bernadette Scott. Mr. Toevs maintains that, according to Defendant Sergeant Christians, the envelope was confiscated because it contained another offender's legal work. Specifically, Mr. Toevs asserts it contained a filing sent to him by an attorney as a template to assist him with his own future work. He also complains that Defendant Tom Clements promulgated policies that authorized the confiscation. This claim will be drawn to a district judge and a magistrate judge.

### 4. Equal Protection

Mr. Toevs alleges that in June 2012 Defendant Warden Falk implemented a policy providing inmates with differing out-of-cell times for hygiene and recreational and program needs depending upon their arbitrary housing placement. He specifically complains that, for five months until he was returned to I-Pod in November 2012, he arbitrarily was placed in Building 4-B, which allowed him only one and one-half to two

hours of daily out-of-cell time to exercise, make telephone calls, shower, go to the library, participate in programs, and attend church.  He contends that inmates with the same sentences for the same crime at his same custody level who were placed in Building 3 were allowed over thirteen hours daily to accomplish the same activities.

As a result, he complains he was injured by having to skip Bible study several times to take a shower; skip recreation several times to make phone calls; skip Narcotics Anonymous to go to the library; and forego making telephone calls or taking a shower for two to three days on several occasions because he could not get a turn.  In short, the crux of Mr. Toevs' equal protection claim appears to be that he has had to choose among priorities.

The Equal Protection Clause requires that no state "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV.  "The threshold requirement of an Equal Protection claim is a showing that the government discriminated among groups."  *Kinnell v. Graves*, 265 F.3d 1125, 1128 (10th Cir. 2001). "A state practice will not require strict judicial scrutiny unless it interferes with a 'fundamental right' or discriminates against a 'suspect class' of individuals."  *Vasquez v. Cooper*, 862 F.2d 250, 252 (10th Cir. 1988). "Unless a legislative classification either burdens a fundamental right or targets a suspect class, it need only bear a 'rational relation to some legitimate end' to comport with the Equal Protection Clause of the Fourteenth Amendment."  *White v. Colorado*, 157 F.3d 1226, 1234 (10th Cir.1998) (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)) (emphasis added). *See also Vasquez*, 862 F.2d at 25152 ("Unless it provokes strict judicial scrutiny, a state practice that distinguishes among classes of people will typically survive an equal protection

attack so long as the challenged classification is rationally related to a legitimate governmental purpose") (citation omitted).

Mr. Toevs' allegations do not implicate either a fundamental right or a protected class.  Therefore, when considering his equal protection claim, the Court applies a rational basis test if "the challenged government action does not implicate either a fundamental right or a protected class." *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1110 (10th Cir. 2008).  A person's right to equal protection is violated when the government or its officials treat him differently than others who are similarly situated. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996).  Equal protection, however, does not require that all people be treated identically.  *See Hendking v. Smith*, 781 F.2d 850, 851 (11th Cir. 1986); *Zeigler v. Jackson*, 638 F.2d 776, 779 (5th Cir. 1981).

Mr. Toevs' allegations fails to demonstrate how his equal protection rights were violated by his placement in a building that does not afford him as much out-of-cell time as he would like and as other inmates allegedly receive because of their placement in a different building.  It is not plausible that "there are no relevant differences between [Mr. Toevs] and other inmates that reasonably might account for their different treatment." *Templeman* v. *Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).  As a result, Mr. Toevs cannot establish that he was treated differently than "similarly situated" inmates.  Accordingly, the equal protection claim will be dismissed.

### 5. Cruel and Unusual Punishment

As his fifth and final claim, Mr. Toevs asserts a cumulative claim based upon his allegations in claims one through four.  He generally complains that as a result of

policies created by Defendants Kevin Milyard, Aristedes Zavaras, James Falk, and Tom Clements, the prison has experienced heightened inmate aggression and increased abuse by staff. Those policies include the confiscation of legal papers critical of the DOC; a "zero tolerance" policy allowing staff to deny inmates food as a means of discipline, ECF No. 9 at 11; a restricted-privileges policy permitting inmates to be terminated from their jobs, deprived of property, and forced to live in the southwest yard, where the most violent offenders reside; and a restrictive-movement policy reducing out-of-cell time for most general population inmates from thirteen to six hours a day. Mr. Toevs speculates that "[a]t any given moment I could be swept up in a random outbreak of violence, forced to be locked in a cell with someone I know will try to seriously injure or kill me, or be moved to the most violent segment of the [f]acility." ECF No. 9 at 12.

A prisoner claiming that he has been subjected to cruel and unusual punishment based on the conditions of his confinement must demonstrate, in part, that the infringement was sufficiently serious. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The conditions must deprive a prisoner of the "'minimal civilized measure of life's necessities.'" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). In the absence "of a specific deprivation of a human need, an Eighth Amendment claim based on prison conditions must fail." *Shifrin v. Fields*, 39 F.3d 1112, 1114 (10th Cir. 1994) (internal quotation marks omitted). The core areas entitled to protection pursuant to the

Eighth Amendment include food, shelter, sanitation, personal safety, medical care, and adequate clothing.  *See Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992).

Mr. Toevs' claim focuses on conditions of confinement he finds to be uncomfortable, inconvenient, disagreeable, or dangerous.  The fact that Mr. Toevs disagrees with the conditions of his confinement does not mean that he is deprived of the minimal civilized measure of life's necessities.  In fact, as the Supreme Court of the United States has observed, "[t]o the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offense against society."  *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981); *see also Battle v. Anderson*, 788 F.2d 1421, 1427-28 (10th Cir. 1986) (affirming that a prison is "not a nursery school" but a place for confining convicted felons).

However, Mr. Toevs fails to discuss how he has been injured by the conditions of his confinement.  The United States Constitution requires a party seeking to invoke the jurisdiction of the federal courts to demonstrate that he has suffered some actual or threatened injury, that the injury was caused by the defendants, and that a favorable judicial decision is likely to redress the injury.  *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982); Hackford v. Babbitt, 14 F.3d 1457, 1464 (10th Cir. 1994).  Because Mr. Toevs fails to allege facts demonstrating any actual or threatened injury as a result of the conditions of his confinement, he lacks standing to assert claims concerning those conditions.  *See Citizens Concerned for Separation of Church & State v. City & County of Denver*, 628 F.2d 1289, 1295-96 (10th Cir. 1980).  Claim five will be dismissed.

Accordingly, it is

9

ORDERED that claims two, four, and five are dismissed as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).  It is

FURTHER ORDERED that Defendants James Falk and Anthony DeCesaro are dismissed as parties to this action.  It is

FURTHER ORDERED that claims one asserted against remaining Defendants, Kevin Milyard, Aristedes Zavaras, Captain Whitney, C. O. Merrill, and C. O. Ralston, and claim three asserted against remaining Defendants, Tom Clements, Berandette Scott, and Sgt. Christians, and the case are drawn to a district judge and magistrate judge.

DATED at Denver, Colorado, this  18th  day of   March         , 2013.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court