IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02532-REB-MEH

JANOS TOEVS,

      Plaintiff,

v.

KEVIN MILYARD, in his official and individual capacities,
ROGER WERHOLZ, CDOC Interim Executive Director, in his official capacity,
TOM CLEMENTS, in his individual capacity,
ARISTEDES ZAVARES, in his official and individual capacities,
CAPTAIN WHITNEY, in his official and individual capacities,
C.O. MERRILL, in his official and individual capacities,
C.O. RALSTON, in his official and individual capacities,
BERANDETTE SCOTT, in her official and individual capacities,
SGT. CHRISTIANS, in his official and individual capacities,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Defendants'[1] Motion to Dismiss or Motion for Summary Judgment [filed May 24, 2013; docket #21].   Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motion was referred to this Court for recommendation.   (Docket #22.)   Plaintiff filed a response to the present motion ("Response") on June 13, 2013, and Defendants filed a reply in support of the motion ("Reply") on June 27, 2013.   (Dockets ## 31, 35.)   Because the Defendants presented documents outside of the pleadings in support of a portion of the motion, the Court partially converted the motion to a Motion for Summary Judgment pursuant to Fed. R. Civ. P.

---

[1] All Defendants except Mr. Clements and Mr. Zavares have been served in this case and join in the present motion.   Mr. Clements is now deceased.

12(d), and notified the parties that they were permitted to submit any supplemental materials in

support or opposition of that portion of the motion on or before July 24, 2013.   (Docket #42.)

The matter is now fully briefed and oral argument would not materially assist the Court in its

adjudication of the motion.   For the following reasons and based on the entire record herein, the

Court recommends that Defendants' motion be **granted**.[2]

## BACKGROUND

### I.    Procedural History

Plaintiff, an inmate at the Colorado State Penitentiary, initiated this action on September

21, 2012, and is proceeding *pro se*.   (Docket #1.)   On December 10, 2012, Plaintiff was directed

to file an amended pleading to correct deficiencies; thus, Plaintiff filed the operative Amended

Complaint on January 10, 2013.   (Docket #9.)   In essence, Plaintiff alleges that Defendants (1)

retaliated against him for exercising his right to freedom of expression, (2) denied him access to

the courts, (3) denied him the right to receive and send mail, (4) denied him equal protection under

the law, and (5) denied him the right to be free from cruel and unusual punishment.   *See* Amended

Complaint, docket #9, at 5-12.   On March 18, 2013, Senior Judge Babcock conducted an initial

---

[2]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   FED. R. CIV. P. 72.   The party filing objections must specifically identify those findings or recommendations to which the objections are being made.   The District Court need not consider frivolous, conclusive or general objections.   A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.   *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).   Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.   *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

review of the Amended Complaint and dismissed certain Defendants and Claims Two, Four and Five as legally frivolous.  (Docket #10.)  Thus, Judge Babcock allowed Claim One, alleging retaliation for exercising his right to freedom of expression in violation of the First Amendment, and Claim Three, alleging denial of the Plaintiff's right to send and receive mail, to proceed in this action.  *Id.*

On May 24, 2013, the remaining Defendants responded to the Amended Complaint by filing the present Motion to Dismiss or Motion for Summary Judgment, arguing in part that the Defendants, sued in their official capacities, are entitled to Eleventh Amendment immunity and the individual Defendants are entitled to qualified immunity.  *See* docket #21.  Defendants also assert that Plaintiff failed to exhaust his administrative remedies and fails to state a claim upon which relief can be granted as to the retaliation claim.  *Id.*  Plaintiff filed his Response on June 13, 2013.  (Docket #31.)  Defendants then filed their Reply on June 27, 2013 addressing only the arguments for failure to exhaust administrative remedies.   (Docket #35.)

Because the Defendants submitted evidence outside of the Amended Complaint in support of their position that Plaintiff has not exhausted his administrative remedies, the Court partially converted Defendants' motion to a Motion for Summary Judgment on this issue.  The Court permitted additional briefing and informed the parties that it would consider such briefing in adjudicating the motion.  The only issue for which the Court considers evidence outside of the pleadings is the Defendants' challenge concerning Plaintiff's exhaustion of administrative remedies.

Accordingly, the Court will begin its analysis pursuant to Fed. R. Civ. P. 12(b)(1) to determine whether Defendants in their official capacities are immune pursuant to the Eleventh Amendment.  The Court will then analyze whether Plaintiff has exhausted his administrative

remedies pursuant to Fed. R. Civ. P. 56.   If the Court finds summary judgment is improper, the Court will proceed to analyze Defendants' remaining challenges to Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II.     Statement of Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions or merely conclusory allegations) made by the Plaintiff (or construed liberally) in the Amended Complaint, which are taken as true for analysis under Rule 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The first remaining claim in this action alleges Defendants' retaliation for Plaintiff's exercise of a protected right to freedom of expression.   Plaintiff alleges that on October 20, 2010, he attended a mandatory meeting regarding the facility's expectations for inmates housed in the Incentive Pod ("I-Pod").   (Docket #9 at 5.)   During this meeting, Warden Kevin Milyard asked the Plaintiff, "Do you have a problem with that?"   *Id*.   Plaintiff responded to this question, "Yes, actually I do."   *Id*.   Plaintiff then was removed from the I-Pod and housed in Building 1-A for a period of three weeks.   *Id*.   Plaintiff asserts that Defendant Captain Whitney ordered him moved to Building 1-A and Defendants C.O. Ralston and C.O. Merrill handcuffed and escorted him to Building 1-A.   *Id*.

The second remaining claim in this action alleges the Defendants' denial of Plaintiff's right to send and receive mail.   Plaintiff alleges that in February 2012, he attempted to send "grievances and legal documentation" to the Colorado Prison Law Project after hearing that the project "was seeking information regarding conditions of confinement."   (Docket #9 at 8.)   Prison mailroom staff intercepted and confiscated these grievances and legal documents.   *Id*.   These items were

declared contraband because they contained "legal mail not of the senders" (i.e., containing names of inmates other than the inmate sending the package).   *Id*.

In September 2012, attorney Brian Gwynn sent Plaintiff a letter intended as a template for Plaintiff to use in further legal work.   *Id*.   On September 17, 2012, Plaintiff was notified that this letter was rejected because it contained "other offender's legal work."   *Id*.   Plaintiff argues that the term, "other offender's legal work" is not defined in the Administrative Regulations of the prison and, therefore, leaves broad discretion to prison officials in the mail room to decide what mail is accepted or rejected, causing property issues for the inmates.   *Id*.

## III.   Findings of Fact (Rule 56)

The Court makes the following findings of fact concerning the exhaustion issue viewed in the light most favorable to the Plaintiff, who is the non-moving party in this matter.

1.   The Colorado Department of Corrections provides inmates with administrative remedies pursuant to a three-step grievance process.   (Affidavit of Marshall Griffith, May 24, 2013 ("Griffith Affidavit"), ¶¶ 4-8, docket #21-1.)   The grievance process is set forth by Administrative Regulation (AR) 850-04.   (*See generally* Attachment 1 to Griffith Affidavit, docket #21-1 at 4-20.)

2.   The grievance procedure may not be used to seek review of the classification (housing) of an inmate.   (AR 850-04(IV)(D)(2)(b), docket #21-1 at 7.)

3.   On October 26, 2010, Plaintiff filed an appeal regarding his classification and removal from the I-Pod to Building 1-A.   (CDOC Offender Appeal Form, October 26, 2010, Attachment 1 to Plaintiff's Response, docket #31 at 6-7.)   The classification and removal were upheld by prison officials.   *Id*.

4.   Actions by employees of the prison with regard to rejecting mail being sent or received can

be reviewed pursuant to the CDOC's three-step grievance procedure. (AR 850-04(IV)(D)(1), docket #21-1 at 7.)

5.    On November 3, 2010, Plaintiff attempted to send a letter to inmate Paul Palecek which was rejected because it "contained legal matter not of the senders." (CDOC Offender Grievance Form, November 26, 2010, Attachment 2 to Plaintiff's Response, docket #31 at 8- 9).

6.    Plaintiff filed a Step 1 grievance regarding rejection of the letter to Paul Palecek. *Id*. After it was denied for Plaintiff's alleged failure to comply with AR 740-1 (*id.* at 10), Plaintiff filed a Step 2 grievance, which was similarly denied.   (*Id.* at 11.)

7.    Plaintiff then filed a Step 3 grievance regarding rejection of the letter.  (*Id.* at 12.)  On April 7, 2011, a grievance officer informed Plaintiff by letter that his grievance was denied and that Plaintiff had exhausted his administrative remedies as to this issue.  (*Id.* at 13.)

## LEGAL STANDARDS

### I.    Treatment of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers.   [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).   The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   However, this

6

interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## II.     Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS,* 23 F.3d 1576, 1580 (10th Cir.1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler,* 442 F.2d 674, 677 (10th Cir.1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso,* 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States,* 46 F .3d 1000, 1002 (10th Cir.1995).

First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other

7

> documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002–03 (citations omitted). The present motion launches a facial attack on this Court's subject matter jurisdiction; therefore, the Court will accept the truthfulness of the Amended Complaint's factual allegations for purposes of its Rule 12(b)(1) analysis.

## III.    Dismissal under Fed. R. Civ. P. 56

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Id.* at 323; *see also Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) ("[s]ummary judgment is not proper merely because [plaintiff] failed to file a response").

If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177,

8

1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e).   These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).   "[T]he content of summary judgment evidence must be generally admissible and. . .   if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge."   *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005).   "The court views the record and draws all inferences in the light most favorable to the non-moving party."   *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

## ANALYSIS

The Court will begin by determining, pursuant to Rule 12(b)(1), whether the Court lacks subject matter jurisdiction to hear Plaintiff's claims against Defendants in their official capacities. Next, the Court will determine whether Plaintiff has demonstrated genuine issues of material fact as to exhaustion of his available administrative remedies concerning the claims alleged in this matter.   If the Court finds Plaintiff has exhausted his available administrative remedies, the Court will proceed to address, pursuant to Rule 12(b)(6), whether Defendants Whitney, Ralston, and Merrill are entitled to qualified immunity from liability for Plaintiff's Claim One for retaliation.

## I.      Eleventh Amendment Immunity

Defendants contend that the Eleventh Amendment precludes this Court from hearing Plaintiff's claims to the extent they are brought against Defendants in their official capacities. Claims against state officials in their official capacities are essentially claims against the state entity.   *Ky. v. Graham,* 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.")

(citation and quotations omitted).   It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."   *Hunt v. Bennett,* 17 F .3d 1263, 1267 (10th Cir. 1994).

Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies.   *Blatchford v. Native Village of Noatak & Circle Village,* 501 U.S. 775, 785–86 (1991); *see also Hunt v. Colo. Dep't of Corr.,* 271 F. App'x 778 (10th Cir.2008) (CDOC is an agency of the State of Colorado that has not expressly waived its sovereign immunity from Section 1983 claims).   Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal rights.   *See Ex parte Young,* 209 U.S. 123, 159–60 (1908).   But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages.   *Buchwald v. University of New Mexico Sch. of Med.,* 159 F.3d 487, 495 (10th Cir.1998) (citations and quotations omitted).

Here, the Plaintiff seeks punitive damages against the Defendants.   (Amended Complaint, docket #9 at 14.)   To the extent that Plaintiff asserts claims for money damages against the Defendants in their official capacities, such claims would be barred by the Eleventh Amendment. The Court recommends that the District Court find it lacks subject matter jurisdiction over claims

for punitive and any other money damages against Defendants in their official capacities in this case, and grant Defendants' motion to dismiss such claims.

Construing the pleading liberally, the Court finds Plaintiff also seeks injunctive relief for his remaining claims as follows:

1. Abolition of SCF policies suppressing inmate speech, including modification of the COPD charge False Reporting.

…

3. Revision of DOC policies to clarify what constitutes "other offender's legal work."

4. Modification of SCF movement and housing policies necessary to reduce violence and allow for basic human needs.

...

(*Id.*)   Without opining as to whether Plaintiff, if he prevails, would be entitled to the injunctive relief he seeks, the Court finds that Plaintiff plausibly alleges prospective injunctive relief for his claims against Defendants in their official capacities.   Therefore, the Court recommends that the District Court find the official-capacity Defendants are not entitled to absolute immunity from Plaintiff's claims for prospective injunctive relief.

## II.    Exhaustion of Administrative Remedies

Defendants argue that Plaintiff has failed to exhaust his available administrative remedies for both remaining claims.   The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust any available administrative remedies before challenging actions by employees of the prison in federal court.   Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (1996).   At one time, exhaustion was left to the discretion of the district court; however, it has since become mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).   "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards."   *Id.*   "Requiring exhaustion allows prison officials an

11

opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007).   The purpose of proper exhaustion is to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.   *Id.* (quoting *Woodford*, 548 U.S. at 94-95).   When a prisoner properly exhausts administrative remedies for some claims, but not for others, the court should not dismiss the entire case; rather, it may dismiss those claims that have not been properly exhausted, while proceeding with the properly exhausted claims.   *Jones*, 549 U.S. at 223-24.

The Supreme Court has held that failure to exhaust all administrative remedies is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.   *Id.* at 216.   All that is required of plaintiffs to properly exhaust administrative remedies is compliance with prison grievance procedures.   *Id.* at 218.

The CDOC maintains a written grievance procedure that includes three levels of appeal for its inmates.   A.R. 850-04.[3]   After the three levels of appeal have been properly exhausted, the grievance officer is responsible for notifying the "offender" that he or she has exhausted his or her administrative remedies.   *Id.* (IV)(G)(1)(c)(1).   Once the offender has exhausted all administrative remedies, he or she may then file a suit in federal court.

A.  Claim One – First Amendment Retaliation

With regard to the retaliation claim, Plaintiff argues that classification and housing of inmates cannot be reviewed pursuant to the grievance procedures set forth in the Administrative Regulations (AR) 850-04, but may only be reviewed by filing an Appeal.   (Attachment 1, Docket

---

[3]The complete regulation is available on the CDOC's website, www.doc.state.co.us.

#21-1.)   In fact, Plaintiff filed an appeal of the decision to remove him from the I-Pod and to classify and house him in Building 1-A, in which he notes that he originally filed the appeal as a "grievance," but was given the appeal form and told that "it wasn't a grievable issue."   (CDOC Offender Appeal Form, October 26, 2010, Attachment 1 to Plaintiff's Response, docket #31 at 7.) Plaintiff argues that by filing this appeal, he has exhausted all available administrative remedies. (Docket #31 at 1.)

Defendants counter that Plaintiff did not specify in his appeal that he suffered retaliation as a result of the removal and classification.   A prisoner is required to exhaust administrative remedies regardless of the relief offered through administrative procedures. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 (2001). A grievance is sufficient to exhaust administrative remedies "to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004), *cited with approval in Anderson v. Golder*, 212 F. App'x 726, 728 (10th Cir. 2007). The grievance need not allege full-fledged legal theories but must alert prison officials to the problem and provide them an opportunity to address it. *Id.* at 518; *see also Slusher v. Suthers*, No. 01-cv-02299-PSF, 2006 WL 2846452, at *3 (D. Colo. Sept. 29, 2006) ("this Court has generally found a grievance to be adequate for purposes of administrative exhaustion when the grievance alerts the prison to the nature of the wrong for which redress is sought") (internal quotations and citations omitted).

Here, it is undisputed that the Plaintiff does not mention in the appeal form that he believed he suffered retaliation, engaged in any protected activity or suffered any negative effect on his rights when he was removed from the I-Pod and classified/housed in Building 1-A.   Rather, after describing the incident, Plaintiff merely states that "[he'd] like to know exactly what [he] did

13

wrong, why [he] was removed from the I-Pod, handcuffed, taken to the shift commander's office, and why [he's] housed in 1-A as if [he's] been convicted of a write-up." (CDOC Offender Appeal Form, October 26, 2010, Attachment 1 to Plaintiff's Response, docket #31 at 7.)   The Court finds that Plaintiff's appeal form is insufficient to put the Defendants on notice of the retaliation claim Plaintiff brings in this case.

In opposition, Plaintiff argues that the applicable administrative remedies were unavailable to him.   For an inmate to properly exhaust in accordance with the Prison Litigation Reform Act (PLRA), the administrative remedies must be made available to the inmate.   42 U.S.C. § 1997e(a).   According to the Tenth Circuit,

> [W]e examine the plain meaning of the term "available" in § 1997e(a) and find that a prisoner is only required to exhaust those procedures that he or she is reasonably **capable** of exhausting. *See Underwood v. Wilson,* 151 F.3d 292, 295 (5th Cir. 1998). For example, "[T]he failure [of prison officials] to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable." *Jernigan,* 304 F.3d at 1032. Similarly, a prisoner lacks "available" remedies where prison officials deny him or her the necessary grievance forms. *Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir. 2003). Where prison officials prevent or thwart a prisoner from utilizing an administrative remedy, they have rendered that remedy "unavailable" and a court will deem that procedure "exhausted." *See Lyon v. Vande Krol,* 305 F.3d 806, 808 (8th Cir. 2002); *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir. 2001).

*Hoover v. West*, 93 F. App'x 177, 181 (10th Cir. 2004) (emphasis in original); *see also Sparks v. Foster*, 241 F. App'x 467, 473 (10th Cir. 2007).   Thus, it is material to the exhaustion issue whether request forms for administrative remedies were made available to the Plaintiff.

Plaintiff argues that, when he attempted to file a grievance regarding the retaliation claim, he was "told that it wasn't grievable" and given the appeal form.   *See id.*; *see also* Response, docket #31 at 1.   However, Plaintiff's unsworn response brief is not admissible evidence pursuant to Rule 56(c), nor is the appeal form admissible for demonstrating the truth of the matter asserted

14

(i.e., that Plaintiff was told by a prison official the matter was not grievable).   Further, Plaintiff's Amended Complaint, which is sworn under penalty of perjury and may be admissible for purposes of summary judgment, mentions nothing about prison officials telling Plaintiff his complaint was not grievable and handing him an appeal form.   Accordingly, the Plaintiff does not provide admissible evidence raising an issue of fact as to whether his administrative remedies were unavailable and, thus, exhausted.

The Court recommends that the District Court find Plaintiff has failed to exhaust his administrative remedies with respect to Claim One alleging First Amendment retaliation.

B. Claim Three – First Amendment Violation

With respect to Claim Three alleging Defendants' denial of Plaintiff's right to send and receive mail, Plaintiff asserts that he invoked the three-step grievance process and was denied without remedy.   (Response, docket #31 at 1.)   In support of this assertion, Plaintiff attaches completed grievance forms and their responses to his Response.   (*Id.*, Attachment #2, docket #31.)   However, the documents attached to the Response show that the three-step grievance process was completed for mail sent in November 2010, while the allegations in Claim Three refer to mail sent in February 2012 and received in September 2012.   (*Compare id. with* Amended Complaint, docket #9 at 8.)   Thus, there is no evidence that Plaintiff put the Defendants on notice of the allegations set forth in Claim Three or exhausted his administrative remedies with regard to the letters sent in February 2012 and received in September 2012.

For reasons stated above, the Court finds that Plaintiff has failed to demonstrate genuine issues of fact as to whether he exhausted his available administrative remedies for both Claim One and Claim Three.   Plaintiff must invoke the three-step grievance process and, therefore, exhaust all administrative remedies, before filing suit in federal court.   Accordingly, the Court

15

recommends that the District Court grant Defendants' motion for summary judgment as to the remaining Claims One and Three.

Because the Plaintiff has failed to exhaust his administrative remedies for the remaining claims, the Court will not proceed to analyze both claims pursuant to Defendants' challenges under Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

The Court finds that, to the extent the Plaintiff is suing Defendants in their official capacities, the Court lacks subject matter jurisdiction to hear Plaintiff's claims for monetary damages, but has jurisdiction to hear Plaintiff's claims for prospective injunctive relief. However, with respect to the official-capacity claims for injunctive relief and the individual-capacity claims, the Court finds that Plaintiff has failed to exhaust his administrative remedies for his remaining Claims One and Three. Accordingly, the Court respectfully RECOMMENDS that Defendants' Motion to Dismiss or Motion for Summary Judgment [filed May 24, 2013; docket #21], which has been partially converted to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d), be **granted**.

Dated and entered at Denver, Colorado, this 31st day of July, 2013.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge